172 P.3d 1140

STATE of Idaho, Plaintiff–Respondent,

v.

Lawrence E. GOMEZ, Defendant–Appellant.

No. 33146.

Court of Appeals of Idaho.

Sept. 26, 2007.

Review Denied Dec. 18, 2007.

---

Molly J. Huskey, State Appellate Public Defender; Elizabeth A. Allred, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Ralph R. Blount, Deputy Attorney General, Boise, for respondent.

GUTIERREZ, Judge.

Lawrence E. Gomez appeals from his judgment of conviction for unlawful possession of a firearm, possession of methamphetamine, possession of drug paraphernalia, driving while under the influence, possession of marijuana, and a persistent violator enhancement. Specifically, Gomez challenges the district court's denial of his motion to suppress. We affirm.

## I.

## BACKGROUND

On graveyard shift, at 1:33 a.m., on December 13, 2005, Coeur d'Alene Police Officer Patrick Sullivan observed a gold sedan accelerating from forty-two to forty-seven miles per hour in a thirty-five mile per hour zone. Officer Sullivan pulled over the speeding sedan driven by Gomez. Officer Sullivan observed that the whites of Gomez's eyes were red, but he exuded no odor of alcohol. Officer Sullivan suspected Gomez was under the influence of some intoxicant, however, because Gomez spoke with a broken and rapid speech pattern, making him difficult to understand.

During the initial exchange with the officer, Gomez volunteered that he had "gotten out" of prison in April. Officer Sullivan returned to his patrol vehicle, requested Gomez's driver's history from dispatch, and prepared a citation for speeding. Dispatch advised that Gomez had a weapons offense and "officer safety alerts" for battery, resisting an officer, and carrying a concealed weapon. Officer Buhl arrived several min-

utes later and Officer Sullivan, accompanied by the back-up officer, returned to Gomez's vehicle with the citation at exactly 1:41:44 a.m. according to a video recording of the traffic stop.

Prior to explaining the citation for speeding and handing it to Gomez to sign, Officer Sullivan made further conversation to check for additional signs of intoxication. In response to a question about binoculars on his front seat, Gomez explained he was having girlfriend problems and was using the binoculars to spy on her. Officer Sullivan then gave the citation to Gomez, who apparently signed it and handed the citation back at 1:42:16 a.m. Sometime within the next twelve to sixteen seconds while Officer Sullivan sorted the paperwork, Officer Buhl-who from the passenger side of the vehicle had been looking through the windows with a flashlight-said he could see a gun case on the floor underneath the driver's legs. Gomez replied that it was nothing and began to fidget, looking back and forth.

Officer Sullivan then ordered Gomez out of the vehicle "[d]ue to his alert codes, Officer Buhl seeing a gun case underneath the driver seat and in easy reach of the driver, his big bulky clothing, the fact that [he] was a felon and his immediate nervous reaction." As Gomez stepped out of the sedan, Officer Sullivan saw the small closed gun case on the floor in front of the driver's seat. When asked if he was carrying a weapon, Gomez denied it and then said "you can't search my car." Although the officers had not seen the actual weapon at that point, Gomez proclaimed "I'll beat the charge, I have once before." After a fruitless pat down search of Gomez, Officer Sullivan reached into the sedan and grabbed the camouflage gun case. He felt a gun inside and partially unzipped the case, revealing the black handle of a handgun. Gomez was placed under arrest.

Upon searching the passenger compartment the officers found two baggies with crystalline powder in the sedan. A search of Gomez at the Kootenai County Jail produced marijuana and a used pipe for smoking methamphetamine. Gomez was charged in Count I with unlawful possession of a firearm, I.C.

§ 18–3316; Count II, possession of methamphetamine, I.C. § 37–2732(c); Count III, possession of drug paraphernalia, I.C. § 37–2734A(1); Count IV, driving while under the influence, I.C. § 18–8004; Count V, possession of marijuana, I.C. § 37–2732(c)(3); and a persistent violator enhancement, I.C. § 19–2514.

Gomez filed a motion to suppress, which the district court denied upon determining that the investigative detention was not unreasonably extended and that the gun case, in plain view, provided probable cause to search the vehicle for a concealed weapon. Gomez entered a conditional guilty plea to counts I, II, III, V, and the persistent violator enhancement, and an *Alford*[1] plea to count IV, thus preserving his right to appeal the denial of his motion to suppress. This appeal followed.

## II.

## STANDARD OF REVIEW

■ The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact which are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson,* 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct.App.1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez–Molina,* 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers,* 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct.App.1999).

## III.

## DISCUSSION

■ A traffic stop by an officer constitutes a seizure of the vehicle's occupants and implicates the Fourth Amendment's prohibition against unreasonable searches and sei-

1. *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

zures.[2] *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 1395, 59 L.Ed.2d 660, 667 (1979). Generally, "probable cause to believe the law has been broken 'outbalances' private interest in avoiding police contact." *Whren v. United States*, 517 U.S. 806, 818, 116 S.Ct. 1769, 1776, 135 L.Ed.2d 89, 100 (1996).

## A. Length and Scope of the Investigatory Detention Not Unreasonable

Gomez does not challenge the legality of the initial traffic stop for speeding. Instead, Gomez asserts that *after* he signed and returned the citation, the officers unreasonably extended the stop in order to visually inspect the interior of his vehicle. This extension, Gomez contends, went beyond what was necessary to complete the stop.

■■■ An investigative detention must be temporary and last no longer than necessary to effectuate the purpose of the stop. *State v. Roe*, 140 Idaho 176, 181, 90 P.3d 926, 931 (Ct.App.2004); *State v. Gutierrez*, 137 Idaho 647, 651, 51 P.3d 461, 465 (Ct.App.2002). Where a person is detained, the scope of detention must be carefully tailored to its underlying justification. *Roe*, 140 Idaho at 181, 90 P.3d at 931; *State v. Parkinson*, 135 Idaho 357, 361, 17 P.3d 301, 305 (Ct.App. 2000). The scope of the intrusion permitted will vary to some extent with the particular facts and circumstances of each case. *Roe*, 140 Idaho at 181, 90 P.3d at 931; *Parkinson*, 135 Idaho at 361, 17 P.3d at 305. However, brief inquiries not otherwise related to the initial purpose of the stop do not necessarily violate a detainee's Fourth Amendment rights. *Roe*, 140 Idaho at 181, 90 P.3d at 931. Any routine traffic stop might turn up suspicious circumstances that could justify an officer asking further questions unrelated to the stop. *State v. Myers*, 118 Idaho 608, 613, 798 P.2d 453, 458 (Ct.App.1990). The officer's observations, general inquiries, and events succeeding the stop may—and often do—give rise to legitimate reasons for particularized lines of inquiry and further investigation by an officer. *Id.* Accordingly, the length and scope of the initial investigatory detention may be lawfully expanded if there exist objective and specific articulable facts that justify suspicion that the detained person is, has been, or is about to be engaged in criminal activity. *Id.*

■■■ Here, the sixteen-second extension of the traffic stop was permissible under the circumstances. From his first contact during the traffic stop, Officer Sullivan suspected Gomez was under the influence. At the initial contact, Officer Sullivan observed that the whites of Gomez's eyes had a "marked reddening" to them. Officer Sullivan also took note that Gomez had no idea how fast he was traveling and that Gomez spoke rapidly and with a broken pattern. In light of the objective facts and circumstances known to Officer Sullivan, it was reasonable for the officers to continue to detain Gomez during the remaining seconds in which Officer Sullivan checked to make sure the citation paperwork was signed and in order, and continued his observation of Gomez for signs of intoxication. During this time, it was perfectly permissible for Officer Buhl to continue his visual inspection of the sedan for concealed weapons and contraband. *See, e.g., State v. Albaugh*, 133 Idaho 587, 990 P.2d 753 (Ct.App.1999) (holding questioning by officer after uncontested valid stop did not extend beyond permissible scope when officer suspected driver was under the influence based on appearance and conduct). We note that Officer Buhl did not "search" Gomez's vehicle merely by shining his flashlight inside during the investigative detention. "[T]he use of artificial means to illuminate a darkened area simply does not constitute a search." *Texas v. Brown*, 460 U.S. 730, 740, 103 S.Ct. 1535, 1542, 75 L.Ed.2d 502, 512 (1983). Therefore, the scope of Gomez's detention was properly extended upon reasonable suspicion that he was engaged in driving under the influence. We conclude that the length and scope of the investigatory detention lasted no longer than necessary.

**2.** Although Gomez contends that both the Idaho and United States constitutions were violated, he provides no cogent reason why Article I, Section 17 of the Idaho Constitution should be differently applied in this case. Consequently, the Court relies on judicial interpretation of the Fourth Amendment in its analysis of Gomez's claims. *See State v. Schaffer*, 133 Idaho 126, 130, 982 P.2d 961, 965 (Ct.App.1999).

### B. Probable Cause Present to Believe Felon Possessed a Firearm

The district court determined there was probable cause both to search Gomez's vehicle and then to arrest him for the crimes of carrying a concealed weapon and being a felon in possession of a firearm. Gomez contends that the mere presence of the gun case did not create probable cause to search his vehicle, open the gun case, or arrest him.

A warrantless search is presumptively unreasonable unless it falls within certain special and well-delineated exceptions to the warrant requirement. *Coolidge v. New Hampshire*, 403 U.S. 443, 454–55, 91 S.Ct. 2022, 2031–32, 29 L.Ed.2d 564, 575–76 (1971); *State v. Ferreira*, 133 Idaho 474, 479, 988 P.2d 700, 705 (Ct.App.1999). The automobile exception to the warrant requirement allows law enforcement officers to conduct warrantless searches of automobiles if they have probable cause to believe that the automobile contains contraband or evidence of a crime. *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). These searches may include the search of any container within the car if the container could reasonably contain the suspected contraband or evidence. *United States v. Ross*, 456 U.S. 798, 825, 102 S.Ct. 2157, 2173, 72 L.Ed.2d 572, 594 (1982). Probable cause is the possession of information that would lead a person of ordinary care and prudence to believe or entertain an honest and strong presumption that such person is guilty. *State v. Julian*, 129 Idaho 133, 137, 922 P.2d 1059, 1063 (1996). When analyzing the existence of probable cause, this Court must determine whether the facts available to the officers at the moment of the search warranted a person of reasonable caution to believe that the action taken was appropriate. *Julian*, 129 Idaho at 136, 922 P.2d at 1062; *State v. Hobson*, 95 Idaho 920, 925, 523 P.2d 523, 528 (1974). The facts making up the probability are viewed from an objective standpoint. *Julian*, 129 Idaho at 136–37, 922 P.2d at 1062–63. Additionally, in passing on the question of probable cause, the expertise and experience of the officer may be taken into account. *State v. Ramirez*, 121 Idaho 319, 323, 824 P.2d 894, 898 (Ct.App.1991).

In this case, Officer Sullivan was aware of Gomez's recent release from prison and status as a felon; he knew that Gomez had a combative history and weapons violations from past encounters with law enforcement officers; he observed Gomez's nervous behavior upon mention of the partially hidden gun case; and heard Gomez's implicit admission of wrongful possession when Gomez remarked that he would beat the charge and had done so before. Officer Sullivan further observed that the case in Gomez's automobile was about the size of a pistol case, ten to twelve inches long and six to eight inches wide at its widest point, which was consistent with his experience in identifying other similar gun cases. The objective facts presented to Officer Sullivan and all of the reasonable inferences drawn from those facts, supported an honest and strong presumption that there existed evidence of a crime—unlawful possession of a firearm by a felon. Accordingly, Officer Sullivan had probable cause to search the vehicle and all containers within the vehicle which could contain a firearm. Once Officer Sullivan confirmed his belief that Gomez was unlawfully in possession of a firearm and placed him under arrest, the subsequent search of the car took place incident to lawful arrest and therefore did not require a warrant. *New York v. Belton*, 453 U.S. 454, 460–61, 101 S.Ct. 2860, 2864–65, 69 L.Ed.2d 768, 774–75 (1981); *State v. Watts*, 142 Idaho 230, 234, 127 P.3d 133, 137 (2005).

Because the issue of probable cause is dispositive of Gomez's appeal, we do not address Gomez's alternative arguments.

### IV.

### CONCLUSION

The length and scope of the investigatory detention was not unreasonably extended and the officers possessed probable cause to seize and open the gun case. They also were entitled to further search Gomez's vehicle incident to lawful arrest. The district court did not err in its denial of the motion to suppress. Accordingly, Gomez's judgment of conviction for unlawful possession of a firearm, possession of methamphetamine, pos-

session of drug paraphernalia, driving while under the influence, possession of marijuana, and a persistent violator enhancement is affirmed.

Chief Judge PERRY and Judge LANSING concur.

