177 P.3d 362

**Darrell Boyd BALDWIN, Jr.,
Petitioner–Appellant,**

v.

**STATE of Idaho, Respondent.**

No. 34353.

Supreme Court of Idaho,
Boise, November 2007 Term.

Jan. 10, 2008.

Darrell B. Baldwin, Jr., pro se.

Honorable Lawrence G. Wasden, Idaho Attorney General, Boise, for respondent.

J. JONES, Justice.

A jury convicted Darrell Boyd Baldwin of felony possession of a controlled substance. Baldwin appealed, asserting error in the district court's admission of hearsay evidence and alleging the district court abused its discretion in sentencing. The court of appeals affirmed the district court in an unpublished opinion. Baldwin subsequently filed a petition for post-conviction relief in the district court, alleging ineffective assistance of counsel. The district court denied the petition. Baldwin filed a timely appeal, and the court of appeals affirmed in another unpublished opinion. Baldwin sought and was granted review by this Court.

## I.

Darrell Baldwin was convicted of possession of a controlled substance and sentenced to a term of two years fixed, and five years indeterminate, based on the seizure of 0.05 grams of heroin. Baldwin claims that the conviction resulted from ineffective assistance of trial counsel and that he is entitled to post-conviction relief.

The events of the night are largely disputed by the parties. On January 9, 2002, Detectives John Terry and Jeff Stiles visited Sandra Vanek's home, accompanied by Patrol Officer Andrew Johnson. According to Detective Terry's police report, Ms. Vanek gave the detectives consent to search the house for drugs. According to Baldwin, she in fact gave the detectives permission to go upstairs and speak with Mr. Baldwin, but did not give the police permission to search the house. Ms. Vanek testified at trial that Officer Terry

came to the door and asked if Moose[1] was there. Ms. Vanek responded "yes" and Officer Terry asked if he could talk to Moose. Ms. Vanek then gave Terry permission to go upstairs to talk to Moose.

At the top of the stairs, the detectives observed Baldwin seated on a couch in the bedroom. Baldwin had a large knife on his belt, and there was a gun on the bed near the couch. Although the detectives first suspected this was a firearm, Detective Terry examined the gun and determined it was a pellet gun replica of an actual pistol. Detective Terry then asked Baldwin to stand so that he could search him and talk with him safely without any weapons nearby. At this point, the parties have significantly different versions of the events.

According to Detective Terry, as Baldwin stood, he put his right hand in his pocket and discarded a pill bottle onto the couch. After he secured Baldwin, Detective Terry picked up the pill bottle from the couch, and observed two balloons inside, one red balloon with some pills inside and one green balloon with what the detective believed to be heroin. Terry testified at trial that Baldwin voluntarily stated that these balloons contained brown sugar and muscle relaxants. Detective Stiles similarly testified that Baldwin made these statements voluntarily in response to a conversation between Detectives Terry and Stiles. The detectives did not advise Baldwin of his *Miranda* rights at any point during this time. Detective Stiles took possession of the pill bottle. He opened the pill bottle and balloons at some point while at the house.[2] Stiles found pills inside the red balloon, and a sticky substance consistent with heroin in the green balloon.

Detectives Terry and Stiles both testified at trial that Baldwin consented to a search of the bedroom because he was "just visiting" and did not live in that room. According to the detectives, Detective Terry took Baldwin downstairs at this time and Detective Stiles conducted a search. Detective Terry testified at trial that he called Officer Johnson to come up at some point during the interaction.

However, Officer Johnson was not present the entire time, and Detective Terry is unaware whether Johnson made any audio recordings. During the search, Stiles found documents, photographs and certain "indicia of occupancy" in a dresser drawer. In addition, Stiles found two additional balloons in the dresser drawer.

Baldwin's account differs significantly. According to Baldwin's affidavit, Officer Terry ordered Baldwin off the couch, pat searched him, and then handcuffed him. Terry then moved Baldwin into the hallway with Officer Johnson while Detectives Stiles and Terry conducted a search of the bedroom. Moments later, Detective Stiles told Baldwin he had found a pill bottle containing balloons in Baldwin's jacket pocket. Baldwin asserts the detectives lied at trial to avoid a search and seizure violation. Baldwin did not testify at trial, and these allegations are largely his personal accounting of events, which are set forth in his Petition for Post–Conviction Relief. In order to prove his allegations, Baldwin seeks to interview Officer Johnson and obtain an audio recording of the interaction, which he claims must exist since patrol officers are required by the police department to record all interactions.

The State charged Baldwin with possession of a controlled substance pursuant to I.C. § 37–2732(c). The district court appointed a public defender to represent him. Baldwin claims his public defender was ineffective in his failure to communicate and failure to investigate and subpoena witnesses. At the time for his preliminary hearing, Baldwin alleges that his public defender made a "deal" for a suppression hearing and bond reduction in exchange for a waiver of Baldwin's preliminary hearing. The public defender never moved for suppression of the drug evidence. At trial, the district court ruled that Baldwin could not challenge the validity of the consent search because "the time to file pretrial motions had long passed."

After a mistrial due to references of prior contact between the police and Baldwin, the

---

1. Darrell Baldwin is commonly known by the parties and detectives as "Moose."

2. The record does not clarify at precisely what point Detective Stiles opened the pill bottle.

district court conducted a second trial. The evidence presented at trial primarily concerned the three balloons the detectives believed to contain heroin.[3] To summarize the detectives' account, the first balloon was found on the couch next to Baldwin, and Detective Stiles found two additional balloons containing suspected heroin in the dresser drawer. Baldwin asserts all balloons were found during an illegal search of the bedroom while he was handcuffed on the landing. At trial, Stiles testified he conducted field testing on the three balloons at his office later that day. These tests confirmed the existence of heroin in the three balloons. In addition, a technician testified at trial for the Idaho State Police Forensic Services Laboratory. The technician tested the balloon found on the couch and one of the balloons found in the dresser for heroin. The lab test confirmed that the green balloon, found on the couch near Baldwin, contained heroin. She testified that, although one of the balloons found in the dresser appeared to contain heroin, she did not analyze that item. Finally, although the technician also believed the other balloon from the dresser appeared to contain heroin, the lab test did not show any controlled substances were present in that item.

A jury found Baldwin guilty of possession of a controlled substance pursuant to I.C. § 37–2732. On August 19, 2002, the district court entered judgment imposing a unified sentence of seven years with two years fixed and five years indeterminate. Baldwin appealed, claiming the district court erred by admitting inadmissible hearsay and imposing an excessive sentence. The Court of Appeals affirmed the judgment of conviction and sentence on November 26, 2003 in an unpublished opinion.

On January 16, 2004, Baldwin filed a Petition and Affidavit for Post Conviction Relief pursuant to the Uniform Post Conviction Procedure Act, Idaho Code §§ 19–4901–4911. In his Petition, Baldwin states the following grounds for relief: (a) exclusionary rule claim (due to ineffective assistance of counsel); (b) search and seizure violation (due to ineffective assistance of counsel); (c) Miranda rights violation (due to ineffective assistance of counsel); (d) ineffective assistance of counsel; and (e) state interference (due to ineffective assistance of counsel).[4] Baldwin attached a motion for appointment of counsel and a motion to augment the record with a transcript of the proceedings referenced in the court minutes.

The district court denied the initial request for counsel. After the case was at issue, the court filed a notice of intent to dismiss. Baldwin filed an objection to the notice and renewed his request for counsel, which was granted. With the assistance of counsel, Baldwin filed a supplemental response to the notice of intent to dismiss and requested an evidentiary hearing. He also filed a motion to permit civil discovery, which was never ruled on by the district court. In his objection, Baldwin asserted that a letter written by Ms. Vanek contained material facts that required consideration at an evidentiary hearing. Counsel also implied that a hearing was necessary to determine whether Officer Johnson would support Baldwin's claim that he was not advised of his rights prior to interrogation.

3. The fourth balloon, found in the pill bottle, contained muscle relaxants, which did not result in a charge.

4. Baldwin clearly asserts these claims in the context of his ineffective assistance claim. To the extent he raises the search and seizure and Miranda violations directly; they are barred under I.C. § 19–4901. Idaho Code § 19–4901(b) provides: "Any issue which could have been raised on direct appeal, but was not, is forfeited and may not be considered in post-conviction proceedings, unless it appears to the court, on the basis of a substantial factual showing by affidavit, deposition, or otherwise, that the asserted basis for relief raises a substantial doubt about the reliability of the finding of guilt and could not, in the exercise of due diligence, have been presented earlier." See Rodgers v. State, 129 Idaho 720, 932 P.2d 348 (1997) (Since the issue of prosecutorial misconduct could have been raised on appeal, it was not properly before appellate court in an appeal of a post-conviction proceeding). Baldwin asserts that his claims have been preserved because of the meagerness of the record below. The meagerness of the record, in turn, resulted from ineffective assistance of counsel. Thus, the claims are not raised directly, but preserved through his ineffective assistance claim.

The district court summarily dismissed Baldwin's petition on grounds set forth in its notice. The district court found that a motion to suppress would have failed because Ms. Vanek gave the police officers permission to enter the residence, and because the drugs were either in plain view when they entered or discovered pursuant to a valid frisk. The Court of Appeals affirmed in an unpublished opinion. Baldwin was granted review by this Court.

## II.

In this case, we address whether Baldwin's petition and affidavit raise issues of material fact which preclude summary dismissal; whether the district court erred when it summarily dismissed Baldwin's claim for post-conviction relief based on his counsel's failure to file a motion to suppress evidence allegedly seized in violation of his Fourth Amendment right to be free from unreasonable search and seizure; and whether the district court erred when it dismissed Baldwin's claim for post-conviction relief based on the admission of certain statements allegedly in violation of his Fifth Amendment right to be free from self-incrimination.

### A.

When considering a case on review from the Court of Appeals, this Court gives serious consideration to the Court of Appeals' decision. *State v. Cope,* 142 Idaho 492, 495, 129 P.3d 1241, 1244 (2006) (quoting *Garza v. State,* 139 Idaho 533, 535, 82 P.3d 445, 447 (2003)). This Court does not merely review the correctness of the decision. *Id.* Rather, the Court acts as though it is hearing the matter on direct appeal from the trial court's decision. *Id.*

Baldwin appeals the summary dismissal of his petition for post-conviction relief. An application for post-conviction relief is civil in nature. *Gilpin–Grubb v. State,* 138 Idaho 76, 79–80, 57 P.3d 787, 790–91 (2002). Like a plaintiff in a civil action, the applicant for post-conviction relief must prove by a preponderance of evidence the allegations upon which the application for post-conviction relief is based. *Id.* The court may sum-

marily dismiss a petition for relief when the court is satisfied the applicant is not entitled to relief and no purpose would be served by further proceedings. I.C. § 19–4906(b). However, disposition on the pleadings and record is not proper if there exists a material issue of fact. *Id.* If genuine issues of material fact exist that would entitle the applicant to relief, if resolved in the applicant's favor, summary disposition is improper and an evidentiary hearing must be conducted. *Berg v. State,* 131 Idaho 517, 518, 960 P.2d 738, 739 (1998) (citations omitted).

The district court summarily dismissed Baldwin's petition, finding no material fact existed that would entitle Baldwin to relief if resolved in his favor. Summary dismissal of a petition for post conviction relief is the procedural equivalent of summary judgment under I.R.C.P. 56. *Charboneau v. State,* 140 Idaho 789, 792, 102 P.3d 1108, 1111 (2004). On review, the task of this Court "is to determine whether the appellant has alleged facts in his petition that if true, would entitle him to relief." *Id.* A court is required to accept the petitioner's unrebutted allegations as true, but need not accept the petitioner's conclusions. *Saykhamchone v. State,* 127 Idaho 319, 321, 900 P.2d 795, 797 (1995). Thus, this Court must take Baldwin's allegations as true, and determine if these allegations create genuine issues of material fact that would entitle Baldwin to relief.

### B.

For an application for post-conviction relief based on a claim of ineffective assistance of counsel to survive a summary dismissal, the petitioner must establish that: (1) a material issue of fact exists as to whether counsel's performance was deficient; and (2) a material issue of fact exists as to whether the deficiency prejudiced the applicant's case. *Gilpin–Grubb,* 138 Idaho at 80, 57 P.3d at 791. Baldwin's allegations, if proven as true at a hearing, would show his counsel's failure to file a motion to suppress was deficient performance, and that this deficiency prejudiced Baldwin's case.

To establish deficient assistance, the burden is on the petitioner to show that his attorney's conduct fell below an objective standard of reasonableness. *Ivey v. State,* 123 Idaho 77, 80, 844 P.2d 706, 709 (1992). This objective standard embraces a strong presumption that trial counsel was competent and diligent. *Ivey,* 123 Idaho at 80, 844 P.2d at 709. Thus, the claimant has the burden of showing that his attorney's performance fell below the wide range of reasonable professional assistance. *Berg,* 131 Idaho at 520, 960 P.2d at 741.

To establish prejudice, the claimant must show a reasonable probability that but for his attorney's deficient performance the outcome of the proceeding would have been different. *Berg,* 131 Idaho at 520, 960 P.2d at 741 (citing *Aragon v. State,* 114 Idaho 758, 761, 760 P.2d 1174, 1177 (1988)). Trial counsel's strategic or tactical decisions will not be second-guessed on appeal unless those decisions are based on inadequate preparation, ignorance of relevant law, or other shortcomings capable of objective evaluation. *Gilpin–Grubb,* 138 Idaho at 81, 57 P.3d at 792. "When counsel's trial strategy decisions are made upon the basis of inadequate preparation, ignorance of the applicable law, or other shortcomings capable of *objective* evaluation, the defendant may very well have been denied effective assistance of counsel." *Aragon,* 114 Idaho at 761, 760 P.2d at 1177.

Baldwin met with his trial counsel three times. However, Baldwin asserts the quality of these meetings supports a claim of ineffective assistance. He states that counsel was not willing or interested in hearing his version of the events. He asserts the entire conversation at the first meeting lasted "no longer than one minute" and that his counsel did not have a meaningful conversation with him until the night before his trial. The crux of Baldwin's claim is that his counsel failed to move for suppression of evidence used against him at trial. According to Baldwin, when he arrived for his preliminary hearing, his trial counsel proposed a "deal" by which his bond would be reduced and a suppression hearing held in exchange for Baldwin's waiver of his preliminary hearing. Baldwin claims he would not have waived his prelimi-

nary hearing if counsel had not stated he would file a motion to suppress. Finally, Baldwin claims his trial counsel was ineffective because he failed to investigate and subpoena witnesses, including Ms. Vanek and Officer Johnson. He claims he needed discovery in order to support his claim. Specifically, because counsel failed to interview Officer Johnson and obtain any audio tape of the interaction between Johnson and Baldwin, he was not able to confirm his allegations, aside from his own affidavit and the Affidavit of Sandra Vanek, which states that Ms. Vanek did not consent to a search of the house for drugs. Baldwin did move for civil discovery below, but there is no record of any court action upon his motion. Baldwin points to the ineffective assistance of his counsel to explain his failure to obtain the audio tape. According to Baldwin, counsel's failure to investigate, to follow up on the discovery request and to file a timely suppression motion were prejudicial, unreasonable and below prevailing norms.

The State responds, noting Baldwin in fact met with his counsel three times, related his version of events to counsel, and that counsel spoke with Ms. Vanek prior to trial. As to counsel's failure to interview Officer Johnson, the State argues that Baldwin has not established prejudice because he has failed to show precisely to what Johnson would testify. Since the district court granted a summary dismissal, the issue presented here is simply whether Baldwin's allegations are sufficient to preclude summary dismissal. To survive summary dismissal, Baldwin must show a material issue of fact exists as to whether counsel's performance was deficient and whether the deficiency prejudiced his case. *Gilpin–Grubb,* 138 Idaho at 80, 57 P.3d at 791.

Baldwin asserts that the failure of counsel to move to suppress was deficient performance, and that a motion to suppress would have altered the outcome of his case. Since Baldwin bases this claim on Ms. Vanek's letter and to what Office Johnson *might* testify, the State claims these mere allegations are insufficient to entitle Baldwin to an evidentiary hearing. The State contends Baldwin may not rely on a mere conclusory state-

ment that Officer Johnson would support his version of events. Countering Baldwin's argument that he was improperly denied the opportunity to depose Johnson or otherwise obtain discovery, the State argues the discovery issue is not appealable because there is no adverse ruling on record and because Baldwin has not affirmatively shown he did not receive what he requested.

 To justify an evidentiary hearing, the applicant must tender a factual showing based on evidence that would be admissible at the hearing. *Paradis v. State*, 110 Idaho 534, 536, 716 P.2d 1306, 1308 (1986). The applicant must support the application with written statements from witnesses who are able to give testimony themselves as to facts within their knowledge or otherwise based upon verifiable information. *Id.* Absent witnesses or verifiability of the facts to which they could testify, the application fails to raise material issues of fact sufficient to justify an evidentiary hearing. *Id. See also Ivey*, 123 Idaho at 80, 844 P.2d at 709 (petitioner must support allegations by affidavit based on personal knowledge, setting forth facts that would be admissible at trial under Idaho Rule of Civil Procedure 56(e)). Baldwin presents his own affidavit describing his version of the interaction on January 9. Baldwin's affidavit sets forth facts that would be admissible at trial. Thus, because Baldwin's Petition and Affidavit present facts that would entitle Baldwin to relief, if he were able to prove them at a hearing, the district court erred when it summarily dismissed the petition.

## C.

 Baldwin bases his petition for relief primarily on his trial counsel's failure to file a motion to suppress what he alleges was illegally seized heroin. The State follows the district court's reasoning, arguing that the police were lawfully present on the premises, and therefore the heroin meets the plain view exception. In a post-conviction proceeding challenging an attorney's failure to pursue a motion in the underlying action, the court properly may consider the probability of success of the motion in question in determining whether the attorney's inactivity constituted

incompetent performance. *Boman v. State*, 129 Idaho 520, 526, 927 P.2d 910, 916 (Ct. App.1996). The district court held that a motion to suppress would have failed, and since the motion would have failed, Baldwin could not meet the second prong of the ineffective assistance claim. The court of appeals affirmed. The district court and the court of appeals held the seizure met the plain view exception, or alternatively, the stop and frisk exception. If the detectives' account is true, this is correct. However, if Baldwin's account is true, the seizure does not meet either exception.

As noted above, we must take Baldwin's allegations as true, and determine whether a material fact exists that would entitle Baldwin to an evidentiary hearing. According to Baldwin's affidavit, the detectives ordered him to stand, patted him down, and handcuffed him. At this point, Baldwin was restrained and removed from the room. According to Baldwin, the first balloon was seized from his jacket pocket on the couch *after* he was restrained on the landing. The additional balloons were found in the dresser drawer during a search of the room, to which he did not consent.

 The Fourth Amendment protects society against unreasonable searches and seizures by requiring a warrant supported by probable cause describing with particularity the place to be searched and the items to be seized. *State v. Claiborne*, 120 Idaho 581, 586, 818 P.2d 285, 290 (1991) (citing U.S. Const. amend. IV). The plain view exception is a recognized exception to the warrant requirement, and permits warrantless seizure where certain conditions are met. *Id.* First, the officer must lawfully make an initial intrusion or otherwise properly be in a position from which she or he can view a particular area. Second, it must be immediately apparent to the police that the items they observe may be evidence of crime, contraband, or otherwise subject to seizure. *See Claiborne*, 120 Idaho at 586, 818 P.2d at 290 (citing *Texas v. Brown*, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983); *Horton v. California*, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990)). The second requirement is met when an officer has probable

cause to believe the item in question was associated with criminal activity. *Id.* In this case, the first requirement is clearly met. Although Ms. Vanek did not give the officers consent to search for drugs, it is undisputed that she did give them consent to enter the house and go upstairs to talk with Baldwin. Thus, the officers were lawfully present. There is a material issue of fact, however, as to whether the second condition is met. According to Baldwin's account of events, the pill bottle was not on the couch. Rather, the pill bottle was in his jacket pocket on the couch. If this is true, the evidence was not in plain view, but was subsequently discovered when the officers conducted a search of the premises without consent. This creates an issue of material fact, and Baldwin is entitled to an evidentiary hearing to present evidence in support of his allegations.

 The district court also looked to the stop and frisk exception, finding the officers were entitled to frisk Baldwin for their own safety. This exception allows an officer to conduct a limited self-protective pat down search of a detainee in order to remove any weapons. *State v. Henage*, 143 Idaho 655, 660, 152 P.3d 16, 22 (2007) "Whether an officer may reasonably justify such a search is evaluated in light of the 'facts known to the officers on the scene and the inference of the risk of danger reasonably drawn from the totality of the circumstances.'" *Id.* In determining the reasonableness of the search, the court employs an objective standard. *Id.* Thus, in determining whether the detectives' search was justified, one must determine whether the detectives had objective grounds for believing that Baldwin posed a risk of danger to himself or others. *See id.*

 The parties contest whether the detectives had grounds to conduct a pat-down search. The State contends the search was justified because Baldwin had a knife on his person and a pistol nearby. However, Baldwin points out that the pistol was actually a pellet gun. Other than the fact that Baldwin had a knife and "what appeared to be a firearm", the district court cited no facts indicating what objective grounds the detectives may have had for determining that Baldwin posed a risk of danger. In his affidavit, Baldwin asserts that the pat-down search was unproductive and that Officer Johnson secured and handcuffed him outside the room prior to a further search. At this point, there is no indication that Baldwin posed a risk to the police officers, and he asserts that they had no grounds to continue their search. Baldwin's petition and affidavit thus create a material issue of fact as to whether he posed an initial risk and, even if he did, whether the risk was eliminated before the heroin was discovered. In either case, based on Baldwin's factual claims, the discovery of the heroin in the jacket pocket on the couch does not meet the stop and frisk exception. It is even more apparent that the seizure of the heroin in the dresser drawer does not meet the stop and frisk exception. Baldwin is entitled to an evidentiary hearing to prove his allegations that he did not consent to this search, and that the search itself fell outside the stop and frisk exception.[5]

5. One might also consider the search incident to arrest exception. A search incident to arrest permits police to search an arrestee following a lawful custodial arrest and is premised upon the dual justifications of necessity to (1) protect the officer and other persons in the vicinity from any dangerous objects or weapons in the possession of the person arrested; and (2) prevent concealment or destruction of evidence within the reach of the arrestee. *State v. LaMay*, 140 Idaho 835, 838, 103 P.3d 448, 451 (2004) (citing *Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685, 694 (1969)). Idaho has applied the *Chimel* standard and recognized the following factors in determining what is reasonably within an arrestee's area of immediate control: (1) the distance between the arrestee and the place searched; (2) whether the arrestee was handcuffed or otherwise restrained; (3) whether

police were positioned so as to block the arrestee from the area searched; (4) the ease of access to the area itself; and (5) the number of officers. *Id.* Immediate control is determined based on the objective facts of each case. *Id.* If Baldwin's allegation is true, the detectives' search fell outside the scope of the exception. The balloon was not within Baldwin's reach when he was secured on the landing, and Baldwin certainly could not have reached the dresser drawer to grab a weapon or destroy the balloons. *See LaMay*, 140 Idaho at 839, 103 P.3d at 452 (Where LaMay was restrained in handcuffs and guarded by an officer in the hallway, there were no exigent circumstances justifying the search of a backpack without a warrant where the backpack was nearly fifteen feet away from LaMay and located in a different room: "The premises could have been secured and the evidence supporting the claim of

A genuine issue of material fact exists as to whether or not the detectives' search and seizure violated the Fourth Amendment. If the detectives' search in fact violated the Fourth Amendment, a motion to suppress could have succeeded and altered the outcome of Baldwin's case. Thus, there is a material issue of fact as to whether Baldwin's trial counsel was deficient, and as to whether this deficiency prejudiced Baldwin. Since there is a material issue of fact, the district court erred in summarily dismissing the petition. The court should have afforded Baldwin an evidentiary hearing. *See, e. g., State v. Goodrich,* 104 Idaho 469, 472, 660 P.2d 934, 937 (1983) (It was error for the trial court to grant the petition for summary dismissal where numerous factual disputes existed in the case, including a question whether there was false testimony); *State v. Cobb,* 100 Idaho 116, 594 P.2d 154 (1979) (district court erred by summarily dismissing application because there was a material issue of fact as to whether defendant was under the influence when he entered his guilty plea). Thus, as to the Baldwin's Fourth Amendment claims brought through his ineffective assistance of counsel claim, we vacate the district court's dismissal and remand the case for further proceedings consistent with this opinion.

**D.**

■■■■ Baldwin further asserts that the district judge abused her discretion and erred when she "ignored and failed to grant" Baldwin's motion requesting civil discovery. According to Baldwin, the district court would not grant or even rule on the motion for discovery. Although Baldwin concedes a ruling generally must be made before a higher court may hear his appeal, he asserts "the idea that appellant cannot appeal to a higher court because Judge Bail flat out refused to respond to the Motion is ludicrous." Baldwin claims he had no means of obtaining Officer Johnson's audio recording, absent civil discovery. Thus, Baldwin claims the district court prevented him from proving his claims. The decision to authorize discovery during post-conviction relief is a matter left

probable cause to search presented to a neutral

to the sound discretion of the district court. *Raudebaugh v. State,* 135 Idaho 602, 605, 21 P.3d 924, 927 (2001). Unless discovery is necessary to protect an applicant's substantial rights, the district court is not required to order discovery. *Id.* (the district court did not abuse its discretion in dismissing the case without authorizing the requested discovery where there was no showing that the state's testing was flawed or that there is new technology that would make current testing more reliable). In this case, Baldwin seeks evidence directly from the State. As guidance on remand, it does appear that Johnson should be provided the opportunity to learn whether an audiotape does exist and what Officer Johnson may have to say regarding the interaction with Baldwin. This opportunity need not take the form demanded by Baldwin but, rather, should be determined in the sound discretion of the trial court.

**E.**

■■■■ Baldwin also claims relief based on a *Miranda* violation. Baldwin argues the detectives lied at trial and that his statements that the pill bottle contained brown sugar and muscle relaxants were made in response to direct questioning during custodial interrogation. The detectives concede they did not give *Miranda* warnings to Baldwin, but assert the statements were voluntary and spontaneous. However, even assuming a *Miranda* violation, the admission of these statements was harmless error. To hold an error harmless, this Court must declare a belief, beyond a reasonable doubt, that there was no reasonable possibility that the evidence complained of contributed to the conviction. *State v. Valdez–Molina,* 127 Idaho 102, 106, 897 P.2d 993, 997 (1995) (quoting *State v. Zimmerman,* 121 Idaho 971, 976, 829 P.2d 861, 866 (1992); *State v. Sharp,* 101 Idaho 498, 507, 616 P.2d 1034, 1043 (1980)). The statements here are that the balloons contained brown sugar and muscle relaxers. The evidence at trial primarily involved field tests and lab tests showing the substance in three of the balloons was indeed heroin. Considering the weight of the evidence presented at trial, there is no reasonable possi-

magistrate.").

bility these statements contributed to the conviction in any meaningful way. Thus, there was no prejudice to Baldwin based on the admission of these statements in violation of his *Miranda* rights.

Finally, Baldwin asserts Judge Bail erred by "deliberately and incorrectly restat[ing] and mis-interpret[ing] the facts and substance of [his] claims." Since we remand based on the foregoing analysis, there is no need to address this claim.

### III.

We vacate the district court's summary dismissal and remand for further proceedings consistent with this opinion.

Chief Justice EISMANN, and Justices BURDICK, W. JONES and HORTON concur.

