**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 42377**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2015 Opinion No. 47** |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Filed: July 22, 2015** |
| | ) | |
| **v.** | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **JOSEPH ALAN KNIGHT,** | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | |
| | ) | |

Appeal from the District Court of the Sixth Judicial District, State of Idaho, Bannock County. Hon. Stephen S. Dunn, District Judge.

Judgment of conviction for possession of a controlled substance, <u>vacated</u> and <u>case remanded</u>.

Sara B. Thomas, State Appellate Public Defender; Shawn F. Wilkerson, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

_____

GUTIERREZ, Judge

Joseph Alan Knight appeals from his judgment of conviction for possession of a controlled substance, challenging the denial of his motion to suppress evidence. For the reasons set forth below, we reverse the order denying the motion to suppress evidence, vacate the judgment of conviction, and remand the case to the district court.

**I.**

**FACTS AND PROCEDURE**

On the afternoon of August 19, 2013, detectives and officers of the Pocatello Police Department obtained and served a properly issued warrant on the private residence of Charles Ziebach. The police were searching the residence for methamphetamine, drug paraphernalia, evidence of drug transactions, and weapons. This search was the culminating event in a two-month investigation by narcotics detectives that included gathering information from confidential

informants, surveillance of the premises, two controlled purchases of methamphetamine at the residence, and a search of garbage from the residence; in sum, the investigation provided probable cause to issue a warrant to search the residence for evidence of drug trafficking and use.

The department's SWAT team initially served the warrant as a no-knock, multi-entry breach and call-out due to the high-risk nature of the operation; the risk was elevated by the suspected presence of drugs and information from a confidential informant indicating the presence of weapons in the residence. Knight was present in the residence when police served the warrant. Along with all of the other occupants of the residence, Knight was called out, handcuffed, and detained outside the home while detectives executed the search of the house. One of the SWAT team members, Officer Vanderschaaf, secured the detainees outside the home and searched Knight for weapons and contraband. During the search, the officer discovered a small section of a drinking straw which he identified as drug paraphernalia and a small plastic baggie with methamphetamine. Knight was initially arrested for frequenting, but was later charged by information with possession of a controlled substance, methamphetamine, and an enhancement under the Uniform Controlled Substances Act. During the search of the residence, detectives found methamphetamine and drug paraphernalia in a safe located in a closet in the master bedroom. No other indications of drug sales or use were found in the residence.

Knight moved to suppress the evidence found during the search conducted by Officer Vanderschaaf, claiming that there was no probable cause to arrest him on a frequenting charge. The district court found that there was sufficient probable cause to arrest Knight for frequenting, reasoning that "where the officers had probable cause to believe that the location was being used as a drug house, there was also probable cause to believe that anyone in the house would have knowledge of the purpose for which the house was being used." Knight was convicted, pursuant to a conditional guilty plea, and timely appealed.

## II.

## ANALYSIS

Knight contends the district court erred by denying his motion to suppress the State's evidence. The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a

suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

Knight argues that the probable cause to search the residence, combined with his mere presence in the residence at the time the warrant was executed, was not sufficient to give rise to probable cause for the offense of frequenting. The State identifies the key question in this case as whether the police had probable cause to believe Knight had knowledge that controlled substances were being held for distribution, delivery, or use at the residence. The State then contends that since there was sufficient probable cause to issue a search warrant for the residence, and since Knight was apparently in the residence in the two hours prior to the warrant being served while activity "in a pattern that suggested ongoing drug dealing in the residence" occurred, there was sufficient probable cause to arrest Knight at the time the residence was searched.

A peace officer may make a warrantless arrest when a person has committed a public offense in the presence of the peace officer. I.C. § 19-603(1). Probable cause is the possession of information that would lead a person of ordinary care and prudence to believe or entertain an honest and strong presumption that such person is guilty. *State v. Julian*, 129 Idaho 133, 136, 922 P.2d 1059, 1062 (1996). In analyzing whether probable cause existed, this Court must determine whether the facts available to the officers at the moment of the seizure warranted a person of reasonable caution to believe that the action taken was appropriate. *Id.*; *State v. Hobson*, 95 Idaho 920, 925, 523 P.2d 523, 528 (1974). The application of probable cause to arrest must allow room for some mistakes by the arresting officer; however, the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusion of probability. *Klinger v. United States*, 409 F.2d 299, 304 (8th Cir. 1969); *Julian*, 129 Idaho at 137, 922 P.2d at 1063. The facts making up a probable cause determination are viewed from an objective standpoint. *Julian*, 129 Idaho at 136-37, 922 P.2d at 1062-63. In passing on the question of probable cause, the expertise and the experience of the officer must be taken into account. *State v. Ramirez*, 121 Idaho 319, 323, 824 P.2d 894, 898 (Ct. App. 1991).

A search or seizure of a person must be supported by probable cause particularized to that person. *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979); *State v. Gibson*, 141 Idaho 277, 283, 108 P.3d

3

424, 430 (Ct. App. 2005). It is not sufficient that, coincidently, there is probable cause to search the premises where the person happens to be when a search warrant is executed. *Gibson*, 141 Idaho at 283, 108 P.3d at 430; *State v. Crabb*, 107 Idaho 298, 303, 688 P.2d 1203, 1208 (Ct. App. 1984). "A person's mere proximity to people who are suspected of criminal activity, or presence in a location where a search has been authorized by warrant, does not give probable cause to search that person." *Gibson*, 141 Idaho at 283, 108 P.3d at 430 (citing *Ybarra*, 444 U.S. at 19).

Application of the law in suppression cases is highly fact specific. The district court cites *Draper v. United States*, 358 U.S. 307, 313 (1959) in its order denying Knight's motion to suppress for the principle that officers must use probabilities to determine that there is probable cause to believe that the statute is being violated. Indeed, probable cause may exist when officers make reasonable inferences from the facts and circumstances known to them at the time of an arrest. However, this analysis does not go far enough. Those inferences must still be based on information particularized to the individual being arrested.

The probable cause cases cited by Knight and the State are factually distinguishable from the instant case. While Knight was arrested for his presence in a suspected drug residence, the defendant in *Ybarra* was searched in a public tavern. *Ybarra*, 444 U.S. at 91. The public nature of the tavern distinguishes it from a private residence where, presumably, occupants would be more likely to know of the activity occurring within the house. Yet the legal principles *Ybarra* announces, that probable cause must be particularized to an individual and that probable cause to search the premises does not alone provide probable cause for arrest or search of a present individual, have universal applicability regardless of the specific facts of the case. *Id*.

The State argues that Knight's presence in the residence for the two hours prior to his arrest provides probable cause particularized to him because apparent drug activity occurred at the residence during that time. We disagree. Even though it appeared that drug activity occurred during the two hours prior to Knight's arrest, the search of the residence did not provide any evidence to link that activity to Knight. The drugs and paraphernalia recovered during the search were not out and observable, but were stored away in a safe, inside a bedroom closet. Moreover, the decision to arrest Knight was made prior to the surveillance, thus without the benefit of the

4

observation of apparent drug activity.[1] *Ybarra* stands for the proposition that probable cause must be particularized to an individual, but the facts here indicate that it was not.

In *Maryland v. Pringle*, 540 U.S. 366, 368 (2003), the defendant was arrested subsequent to a traffic stop where probable cause allowed a vehicle search yielding drugs and cash. Yet, a vehicle is distinguishable from a residence in that all of the occupants of a vehicle can be presumed to be participating in a common enterprise, and the close proximity of all of the car's occupants allows for all to have potential dominion and control over the contents of the vehicle. *Id*. at 373. Further, in *Pringle* all of the vehicle occupants denied any ownership of the drugs and cash leading to the reasonable inference that any of the three defendants could be the actual owner. *Id*. at 368. There is no presumption that all occupants of a residence are engaged in a common enterprise as there is with a vehicle. The significantly larger size of a house compared to a vehicle, combined with the secure and private location in which the drugs were found, makes unreasonable any inference that all of the occupants of a home would have had dominion and control over the contraband found in the search. *Pringle* provides that probable cause may derive from the ability of any vehicle occupant to exercise dominion and control over the drugs found during a vehicle search, particularly when all present deny ownership. The facts of this case do not support that officers could reasonably infer Knight's knowledge of drug sales or use in the residence, a required element for a frequenting charge.

In *Crabb*, officers did not observe apparent drug activity for two hours prior to the arrest as they did prior to Knight's arrest. There was no information that gave officers any indication of drug activity in the mobile home in *Crabb* other than that which gave rise to the probable cause for the search warrant, thus distinguishing the instant case. The State attempts to distinguish the initial arrest in *Crabb* from Knight's arrest on the basis of the apparent drug activity while Knight was present in the residence. However, the holding in *Crabb* was based on a lack of information from which the officers could infer knowledge on the part of the defendant. The same is true here as to the lack of particularization of information to Knight. Knight's mere presence in the residence was not sufficient to infer his knowledge of drug activity either before or after the execution of the warrant. None of the information available to the officers could be particularized to Knight without an inference of knowledge through his mere presence. The

---

[1] It should be noted that the officers stormed the house, making it unlikely occupants could have secreted evidence of drug sales or use, yet none were found in plain sight.

5

nature of the information available to the officers in this case, apparent drug activity during two-hour surveillance and drugs found in a safe in the bedroom closet, was not sufficiently particularized to Knight to support probable cause for his arrest.

## III.

## CONCLUSION

The district court erred by denying Knight's motion to suppress the evidence found in his possession while being detained because there was no probable cause for Knight to be arrested for frequenting. Knight's judgment of conviction for possession of a controlled substance is vacated and the district court's order denying Knight's motion to suppress is reversed. This case is remanded to the district court for further proceedings consistent with this opinion.

Chief Judge MELANSON and Judge GRATTON **CONCUR**.