**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 50286**

| | |
|---|---|
| STATE OF IDAHO,<br><br>      Plaintiff-Respondent,<br><br>v.<br><br>ANTHONY G. LOPEZ,<br><br>      Defendant-Appellant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Filed:  June 6, 2025**<br><br>**Melanie Gagnepain, Clerk**<br><br>**THIS IS AN UNPUBLISHED OPINION AND SHALL NOT BE CITED AS AUTHORITY** |

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County.  Hon. Andrea L. Courtney, District Judge.

Order denying motion to suppress and judgment of conviction, <u>affirmed</u>.

Erik R. Lehtinen, State Appellate Public Defender; Ben P. McGreevy, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Kacey L. Jones, Deputy Attorney General, Boise, for respondent.

_____

HUSKEY, Judge

Anthony G. Lopez appeals from the district court's denial of his motion to suppress evidence and his judgment of conviction.  For the reasons set forth below, the district court's order denying the motion to suppress and Lopez's judgment of conviction are affirmed.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Officer Burgoyne was surveilling an apartment known for drug activity.  He observed a truck pull up to the apartment building and watched the passenger get out of the truck, go to the door of one of the apartments, and later return to the truck with something "clearly visible" in his left hand.  Officer Burgoyne observed the passenger, later identified as Lopez, pass an item to the driver, who leaned his head down towards his lap, and while returning to an upright position, wiped his nose before passing the item back to Lopez.  Lopez and the driver passed the item back and

1

forth, each time leaning their heads down towards their laps. Eventually, the truck left the apartment but failed to signal when leaving the apartment's parking lot and when changing lanes. Officer Burgoyne followed the truck but was unable to record the license plate number because his view of the license plate was blocked by a ball hitch. Based on these traffic infractions, Officer Burgoyne stopped the truck.

After approaching the truck, Officer Burgoyne requested identification from both the driver and Lopez and asked if he could search the truck; the driver consented to the search. Officer Burgoyne returned to his patrol vehicle and conducted a records check on Lopez and the driver; both records searches were clear. While conducting the records check, Officer Woodbury arrived. Officer Burgoyne returned to the truck and told the driver he would not be getting a citation and that he and Lopez were free to leave. Officer Burgoyne again asked for consent to search the truck, and the driver consented. Upon exiting the truck, a pat-down search of the driver did not reveal any contraband, and the driver was asked to go stand by the patrol vehicle. Officer Burgoyne then went to the passenger side where Lopez voluntarily exited the truck. A pat-down search of Lopez did not reveal any contraband and Officer Burgoyne asked Lopez to go stand by the driver and Officer Woodbury. Lopez did so.

Officer Burgoyne then searched the cab of the truck and located a piece of tin foil in the pocket of the passenger side door. The officer knew tin foil was often used to burn and smoke drugs from. In light of the tin foil, and the previously observed behavior of the two individuals in the truck, Officer Burgoyne separated the driver and Lopez and questioned them individually. After Officer Burgoyne talked to the driver, the driver was permitted to get back in the truck. Officer Burgoyne then questioned Lopez and testified that Lopez's demeanor was "deceptive and evasive." While questioning Lopez, Officer Burgoyne noticed a bulge in Lopez's left sock near his ankle and asked Lopez to take off his shoes. Lopez removed his shoes, and Officer Burgoyne could more clearly see the bulge. Officer Burgoyne asked Lopez to lift his foot off the ground in order to see the bottom of Lopez's foot. Lopez refused to remove his sock but lifted his leg and turned the bottom of his foot up. In the bottom of Lopez's sock was a quarter-size hole from which protruded a red straw that Officer Burgoyne recognized as a "tooter," or paraphernalia used to ingest drugs.

Lopez was handcuffed and as Officer Burgoyne removed Lopez's sock, a folded-up piece of tin foil fell to the ground. Inside the foil was a partially burned pill that Officer Burgoyne

2

recognized as fentanyl. Lopez was then placed in the patrol vehicle and given the warnings set forth in *Miranda v. Arizona*, 384 U.S. 436 (1966). Although Lopez initially indicated he did not want to answer any questions, in a subsequent conversation with Officer Burgoyne, Lopez agreed that there was a blue pill in the tin foil.

Lopez was charged with one count of felony possession of a controlled substance, Idaho Code § 37-2732(c)(1); one count of destruction, alteration, or concealment of evidence, I.C. § 18-2603; and one count of possession of drug paraphernalia, I.C. § 37-2734A. Lopez filed a motion to suppress the evidence obtained, the State objected, and a hearing was held. Following the hearing, the district court entered a written order denying the motion. Lopez entered a conditional guilty plea to felony possession of a controlled substance, reserving his right to appeal the denial of the motion to suppress. In exchange for his guilty plea, the State agreed to dismiss the remaining counts. Lopez appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

Lopez argues the district court erred in denying his motion to suppress because Lopez was seized without reasonable suspicion of criminal activity when Officer Burgoyne questioned him and ordered him to remove his shoes.[1] Lopez further argues that the investigative detention

---

[1] Although Lopez contends that both constitutions were violated, he provides no cogent reason why Article I, Section 17 of the Idaho Constitution should be applied differently than the Fourth Amendment to the United States Constitution in this case. Therefore, the Court will rely on judicial interpretation of the Fourth Amendment in its analysis of Lopez's claims. *See State v. Schaffer*, 133 Idaho 126, 130, 982 P.2d 961, 965 (Ct. App. 1999).

transformed into a de facto arrest when Officer Burgoyne handcuffed Lopez and that the arrest was not supported by probable cause. Finally, Lopez argues the search incident to his arrest was not valid because the fruits of the search were required to establish probable cause for the arrest. The State argues Lopez was not seized when Officer Burgoyne questioned him because the encounter was consensual. The State further argues that the district court correctly found Lopez consented to Officer Burgoyne's request to remove his shoes and allowed them to be searched. Alternatively, the State argues that Officer Burgoyne had reasonable suspicion for an investigative detention when he spoke to Lopez after searching the truck. And, when Lopez voluntarily allowed the bottom of his sock to be inspected, Officer Burgoyne saw the drug paraphernalia, giving rise to probable cause for an arrest. The State argues Lopez was arrested for possession of drug paraphernalia and the subsequent search revealed the controlled substance in Lopez's sock; thus, nothing about the search of the sock provided probable cause for the arrest.

A.      **Consent**

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. Warrantless searches are presumed to be unreasonable and therefore violative of the Fourth Amendment. *State v. Weaver*, 127 Idaho 288, 290, 900 P.2d 196, 198 (1995). The State may overcome this presumption by demonstrating that a warrantless search either fell within a well-recognized exception to the warrant requirement or was otherwise reasonable under the circumstances. *Id.* A warrantless search may be rendered reasonable by an individual's consent. *State v. Johnson*, 110 Idaho 516, 522, 716 P.2d 1288, 1294 (1986); *State v. Abeyta*, 131 Idaho 704, 707, 963 P.2d 387, 390 (Ct. App. 1998). In such instances, the State has the burden of demonstrating consent by a preponderance of the evidence. *State v. Kilby*, 130 Idaho 747, 749, 947 P.2d 420, 422 (Ct. App. 1997). The State must show that consent was not the result of duress or coercion, either direct or implied. *Schneckloth v. Bustamonte*, 412 U.S. 218, 248 (1973); *State v. Whiteley*, 124 Idaho 261, 264, 858 P.2d 800, 803 (Ct. App. 1993). The voluntariness of an individual's consent is evaluated in light of all the circumstances. *Whiteley*, 124 Idaho at 264, 858 P.2d at 803. Consent to search may be in the form of words, gestures, or conduct. *State v. Knapp*, 120 Idaho 343, 348, 815 P.2d 1083, 1088 (Ct. App. 1991). Whether consent was granted voluntarily, or was a product of coercion, is a question of fact to be determined by all the surrounding circumstances. *State v. Hansen*, 138 Idaho 791, 796, 69 P.3d 1052, 1057 (2003).

4

Lopez does not challenge the initial stop based on the traffic infractions. After completing the records check for the initial traffic stop, Officer Burgoyne returned the driver's licenses, vehicle registration, and other identifying information to Lopez and the driver. Officer Burgoyne then told them they were free to leave. The district court found the detention for the traffic stop ended at this time and as a result, the subsequent interaction between Officer Burgoyne and the parties was consensual. The district court noted that after being told he was free to leave, the driver voluntarily allowed Officer Burgoyne to search his truck, and both the driver and Lopez continued to engage in conversation with the officers.

The district court considers several factors to determine voluntariness including the number of officers involved; the location and conditions of the consent; whether it was at night; whether the individual was free to leave; and whether the individual knew of his right to refuse consent. *State v. Garcia*, 143 Idaho 774, 778, 152 P.3d 645, 649 (Ct. App. 2006). In this case, the district court found that Lopez's continued interaction with Officer Burgoyne was consensual because Officer Burgoyne had already returned Lopez's license and told him he was free to leave, but despite that, Lopez remained by the patrol vehicle and continued to engage in conversation with Officer Burgoyne. As the district court found, "Lopez could have walked away. It was daylight, he was capable of ambulatory movement, the truck was pulled to the side of the road, and there were sidewalks nearby." The district court concluded there were no facts presented that suggested a show of authority that a reasonable person would not have felt free to leave. We agree. The record supports the district court's finding that nothing prevented Lopez from leaving; it was daylight, Lopez had been told he was free to go, the officers did not display any weapons or use a tone or issue commands that demanded compliance. Absent anything in the record showing the officers showed some level of force by a display of weapons, using language or a tone of voice that demanded compliance with an order, or physically restraining Lopez, the district court did not err in concluding the questioning of Lopez was consensual. *Hansen*, 138 Idaho at 796, 69 P.3d at 1057.

**B.     Investigative Detention**

Lopez also argues his compliance was not consensual because he was seized once the driver was permitted to return to the truck, but Lopez was required to remain by the patrol vehicle and was subjected to additional questioning, or when he was "ordered" to take off his shoes.

The determination of whether an investigative detention is reasonable requires a dual inquiry--whether the officer's action was justified at its inception and whether it was reasonably related in scope to the circumstances which justified the interference in the first place. *State v. Roe*, 140 Idaho 176, 181, 90 P.3d 926, 931 (Ct. App. 2004); *State v. Parkinson*, 135 Idaho 357, 361, 17 P.3d 301, 305 (Ct. App. 2000). An investigative detention is permissible if it is based upon specific articulable facts which justify suspicion that the detained person is, has been, or is about to be engaged in criminal activity. *State v. Sheldon*, 139 Idaho 980, 983, 88 P.3d 1220, 1223 (Ct. App. 2003). Such a detention must be temporary and last no longer than necessary to effectuate the purpose of the stop. *Roe*, 140 Idaho at 181, 90 P.3d at 931; *State v. Gutierrez*, 137 Idaho 647, 651, 51 P.3d 461, 465 (Ct. App. 2002). Where a person is detained, the scope of detention must be carefully tailored to its underlying justification. *Roe*, 140 Idaho at 181, 90 P.3d at 931; *Parkinson*, 135 Idaho at 361, 17 P.3d at 305. In this regard, we must focus on the intensity of the detention, as well as its duration. *Roe*, 140 Idaho at 181, 90 P.3d at 931. The scope of the intrusion permitted will vary to some extent with the particular facts and circumstances of each case. *Roe*, 140 Idaho at 181, 90 P.3d at 931; *Parkinson*, 135 Idaho at 361, 17 P.3d at 305. Brief inquiries not otherwise related to the initial purpose of the stop do not necessarily violate a detainee's Fourth Amendment rights. *Roe*, 140 Idaho at 181, 90 P.3d at 931.

The district court held that in addition to Lopez's consent, Officer Burgoyne had reasonable suspicion to further detain Lopez to investigate his involvement in illegal drug activity. This conclusion was based on the evidence presented regarding Officer Burgoyne's discovery of the tin foil in the truck, in combination with Officer Burgoyne's prior observations of the individuals in the truck and Lopez's demeanor. We agree with the district court. Based on the totality of the circumstances, including Officer Burgoyne's earlier observations, the discovery of the tin foil in the truck, and Lopez's demeanor, there was reasonable suspicion of criminal activity that justified a new investigative detention to confirm or dispel any suspicion regarding the use of illegal drugs or the presence of paraphernalia.

Lopez's factual assertion that he was "ordered" to remove his sock is unsupported by the record. The district court found that Officer Burgoyne "asked" Lopez to remove his shoes, and Lopez does not challenge this factual finding on appeal. The district court also found that "Lopez willingly removed his shoes and consented to allow Officer Burgoyne to search his shoes. Lopez voluntarily pointed his heel to the sky, exposing a hole in his sock from which a red straw

6

protruded." For the same reasons that the questioning was consensual, Lopez's choice to remove his shoe and display his foot was also consensual. Nothing about Officer Burgoyne's request exhibited a show of force that transformed the otherwise consensual encounter into a detention.

As to Lopez's arrest, a peace officer may make a warrantless arrest when a person has committed a public offense in the presence of the peace officer. I.C. § 19-603(1). Probable cause is the possession of information that would lead a person of ordinary care and prudence to believe or entertain an honest and strong presumption that such person is guilty. *State v. Islas*, 165 Idaho 260, 264, 443 P.3d 274, 278 (Ct. App. 2019). In analyzing whether probable cause existed, this Court must determine whether the facts available to the officers at the moment of the seizure warranted a person of reasonable caution to believe that the action taken was appropriate. *Id.*; *State v. Hobson*, 95 Idaho 920, 925, 523 P.2d 523, 528 (1974). The facts making up a probable cause determination are viewed from an objective standpoint. *Islas*, 165 Idaho at 264, 443 P.3d at 278. In passing on the question of probable cause, the expertise and the experience of the officer must be taken into account. *State v. Ramirez*, 121 Idaho 319, 323, 824 P.2d 894, 898 (Ct. App. 1991).

Upon observing the drug paraphernalia protruding from the hole in the bottom of Lopez's sock, Officer Burgoyne possessed enough information to reasonably believe that Lopez was committing the offense of possession of drug paraphernalia and, thus, had probable cause to arrest Lopez. The district court did not err in alternatively finding Officer Burgoyne had reasonable suspicion to detain Lopez regarding suspected criminal activity and then in finding probable cause for Lopez's arrest.

## C.     De Facto Arrest

Lopez argues that placing him in handcuffs constituted a de facto arrest and that the pill in his sock, rather than the drug paraphernalia, provided probable cause for the arrest. We need not address whether handcuffing Lopez was a de facto arrest because the State concedes Lopez was arrested for the crime of possession of drug paraphernalia when he was handcuffed. As discussed above, there was probable cause for the arrest. Thus, the issue is whether the search incident to that arrest was valid. The short answer is that the arrest was constitutionally valid.

A search conducted incident to a valid arrest is an exception to the warrant requirement and does not violate the Fourth Amendment proscription against unreasonable searches. *Chimel v. California*, 395 U.S. 752, 762-63 (1969); *State v. Moore*, 129 Idaho 776, 781, 932 P.2d 899,

7

904 (Ct. App. 1996). Pursuant to this exception, the police may search an arrestee incident to a lawful custodial arrest. *United States v. Robinson*, 414 U.S. 218, 235 (1973); *Moore*, 129 Idaho at 781, 932 P.2d at 904. The permissible scope and purposes of a search incident to an arrest is not limited to the removal of weapons but includes the discovery and seizures of evidence of crime and articles of value which, if left in the arrestee's possession, might be used to facilitate his escape. *Moore*, 129 Idaho at 781, 932 P.2d at 904.

The probable cause for the arrest came from the observation of the drug paraphernalia in Lopez's sock; it was that crime for which Lopez was arrested. Because the arrest was valid, Officer Burgoyne was lawfully entitled to search Lopez incident to that arrest. That subsequent search revealed the partially burned pill wrapped in the tin foil in Lopez's sock. As such, the district court did not err in concluding there was no Fourth Amendment violation and thus, no basis to suppress the evidence.

The initial stop in this case was justified by the observed traffic violations. Lopez then voluntarily consented to the search of his person and shoes. During the consensual search, Officer Burgoyne observed drug paraphernalia, which provided probable cause for Lopez's arrest. A search incident to the valid arrest revealed the burned pill. Consequently, there was no violation of Lopez's Fourth Amendment rights.

## IV.

## CONCLUSION

The district court's denial of the motion to suppress and Lopez's judgment of conviction are affirmed.

Chief Judge GRATTON and Judge TRIBE, **CONCUR**.

8